**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| CONA HEALTHCARE LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-00785 |
| | § | |
| MD MEDIA, LLC d/b/a | § | |
| THE DRUG REHAB AGENCY | § | |
| Defendant. | § | |

**MD MEDIA, LLC'S RULE 12(b) MOTION TO DISMISS**
**FOR LACK OF JURISDICTION OR, IN THE ALTERNATIVE,**
**MOTION TO DISMISS FOR IMPROPER VENUE**

To the Honorable Chief Judge Barbara M.G. Lynn:

Defendant MD Media, LLC files this Motion, pursuant to Rules 12(b)(1)–(3), requesting that this Court hold Plaintiff to its contractual agreement to resolve disputes through arbitration by dismissing this lawsuit with prejudice or, alternatively, by dismissing this lawsuit for improper venue.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................. iii

SUMMARY OF ARGUMENT ................................................................................................ v

I. BACKGROUND FOR MOTION TO DISMISS ..................................................................... 1

II. RULE 12(B) MOTION TO DISMISS FOR LACK OF JURISDICTION ................................... 3

    A. Relevant Legal Standards – Rule 12(b)(1) and Binding Arbitration Provisions .................. 3

    B. The Court should dismiss this suit with prejudice pursuant to Rule 12(b)(1) because all of the claims Plaintiff alleges arise from or relate to the Agreement and thus, are subject to binding arbitration. .............................................................................................. 4

    C. Pursuant to the plain language of the Agreement's broad arbitration provision Plaintiff, as signatory to the Agreement, must arbitrate its claims against nonsignatory MD Media. ................................................................................................. 9

    D. Pursuant to the doctrine of equitable estoppel, Plaintiff's claims in this lawsuit must be arbitrated. .......................................................................................................... 10

    E. Alternatively, the Court should dismiss this lawsuit pursuant to Rule 12(b)(1) and 12(b)(2) because Plaintiff's First Amended Complaint does not plead sufficient facts to establish the Court has subject-matter and personal jurisdiction. .......................... 13

III. RULE 12(B)(3) MOTION TO DISMISS FOR IMPROPER VENUE ................................... 14

    A. Relevant Legal Standards – Rule 12(b)(3) ......................................................................... 14

    B. The Plaintiff's First Amended Complaint alleges no facts showing venue lies in this District. 16

    C. Venue does not lie in this District because the venue selection provisions of the contract to which all of Plaintiff's claims relate requires suit be filed in Delaware. ........... 16

IV. CONCLUSION AND REQUEST FOR RELIEF ................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*Ambraco, Inc. v. Bossclip B.V.*,
570 F.3d 233 (5th Cir. 2009) ..................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................13

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tx.*,
571 U.S. 49 (2013)......................................................................15

*Ballew v. Cont'l Airlines, Inc.*,
668 F.3d 777 (5th Cir. 2012) ......................................................4

*Bhatia v. Johnston*,
818 F.2d 418 (5th Cir. 1987) ......................................................8

*Dale v. Citigroup Glob. Markets, Inc.*,
CV M-12-82, 2012 WL 13046848 (S.D. Tex. June 13, 2012) (Crane, J.) ..............................9

*Ford Motor Co. v. Ables*,
207 Fed. Appx. 443 (5th Cir. 2006)............................................8

*Gilbert v. Donahoe*,
751 F.3d 303 (5th Cir. 2014) ..................................................4, 5

*GNH Group, Inc. v. Guggenheim Holdings*, L.L.C.,
CV 19-1932-CFC, 2020 WL 4287358 (D. Del. July 27, 2020) ............................................11

*Grigson v. Creative Artists Agency L.L.C.*,
210 F.3d 524 (5th Cir. 2000) ........................................10, 11, 13

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
143 F.3d 1006 (5th Cir. 1998) ....................................................3

*Innerwireless, Inc. v. Johnson Controls, Inc.*,
CIV. A. 3:07-CV-312-M, 2007 WL 2428591 (N.D. Tex. Aug. 27, 2007)
(Lynn, J.)......................................................................................5

*Kerr-McGee Chem., LLC v. Kemira Pigments Oy*,
CIV. A. 03-191-GMS, 2003 WL 22299045 (D. Del. Oct. 7, 2003) .........................................9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)....................................................................3

*MDPhysicians & Assocs., Inc. v. State Bd. Of Ins.*,
957 F.2d 178 (5th Cir. 1992) ......................................................4

*Nuttall v. Juarez*,
984 F. Supp. 2d 637 (N.D. Tex. 2013) (Lynn, J.)......................15

*Ommani v. Doctor's Associates, Inc.*,
789 F.2d 298 (5th Cir. 1986) ......................................................7

*OYO Hotels, Inc. v. Maingate Worldwide*, LLC,
   3:19-CV-2909-K, 2020 WL 2912198 (N.D. Tex. June 3, 2020) (Kinkeade, J.) ..............14, 15

*Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*,
   139 F.3d 1061 (5th Cir. 1998) ...........................................................................................5, 6

*Plotkin v. IP Axess, Inc.*,
   407 F.3d 690 (5th Cir. 2005) ...............................................................................................13

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*
   388 U.S. 395 (1967)...............................................................................................................5

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ..........................................................................................4, 13

*Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*,
   767 F.2d 1140 (5th Cir. 1985) ...............................................................................................5

*SGC Health Group, Inc. v. Eclinicalworks, LLC*,
   3:15-CV-4022-M, 2016 WL 2595109 (N.D. Tex. May 4, 2016) (Lynn, C.J.)....................4, 7

*Sherer v. Green Tree Servicing LLC*,
   548 F.3d 379 (5th Cir. 2008) .................................................................................................9

*White v. SoftLayer Techn.*,
   2015 WL 5052365 (N.D. Tex. Aug. 27, 2015) (Lynn, J.) .......................................................4

*Yumilicious Franchise, LLC v. Barrie*,
   819 F.3d 170 (5th Cir. 2016) .................................................................................................6

## Statutes and Rules

Fed. R. Civ. P. 12(b)(1)–(3)...........................................................................................3, 13, 14

Tex. Bus. & Com. Code § 51.003.............................................................................................7

Tex. Civ. Prac. & Rem. Code § 37.004 .....................................................................................8

## SUMMARY OF ARGUMENT

Plaintiff entered into a Software Services and License Agreement with Tara Healthcare LLC ("Tara Healthcare") that includes provisions governing dispute resolution, jurisdiction, and forum selection mandating arbitration and Delaware law for "*any*" dispute that is "*related*" to that Agreement. Indeed, Tara Healthcare was formerly a co-defendant in this lawsuit with MD Media LLC ("MD Media") and Plaintiff improperly sought its default. (ECF Nos. 1, 6). However, the same day Tara Healthcare filed its Rule 12(b) Motion to Dismiss citing the contract's arbitration provision, Plaintiff dismissed it from this suit and has represented that it now intends to pursue its claims against Tara Healthcare in arbitration. (ECF Nos. 7, 8). Defendant MD Media is not a party to that contract, but the Agreement's broad arbitration provision still applies to Plaintiff's claims in this suit, which are rooted in contentions that Plaintiff entered into the Agreement based on alleged misrepresentations by Tara Healthcare and MD Media. Thus, in accordance with Fifth Circuit precedent, Plaintiff's claims are all "related" to the contract, and must be arbitrated.

More specifically, the contract requires "*[a]ny controversy* or claim *arising out of* or *relating to*" the contract "shall be settled by arbitration[.]" Here, Plaintiff alleges MD Media misrepresented and failed to disclose information with respect to that *same contract*, and seeks a declaration as to *that contract*. Thus, Plaintiff agreed to arbitrate the claims it purports to allege in this lawsuit.[1] This Court, lacking jurisdiction over Plaintiff's claims, must dismiss this lawsuit with prejudice.

Alternatively, MD Media requests the Court to dismiss this lawsuit for improper venue. The contract to which all of Plaintiff's claims relate explicitly requires that "[a]ny disputes or

---

[1] MD Media offered to submit to arbitration if the parties could not successfully mediate their claims against one another. Plaintiff refuses.

claims arising out of this Services Agreement *or any other matter related hereto*" must be filed in Delaware. This Court should hold Plaintiff to its agreement by dismissing this lawsuit, either for lack of jurisdiction or for improper venue.

## I. BACKGROUND FOR MOTION TO DISMISS

Defendant MD Media, LLC is a consulting company that provides services for those who operate or are looking to operate addiction treatment centers. Plaintiff sought to operate an addiction treatment center. MD Media connected Plaintiff and former defendant Tara Healthcare for this purpose. Tara Healthcare operates RecoveryDelivered.com, a technology platform that connects patients to licensed providers in the state in which they live to aid in addiction treatment.

On June 29, 2021, Plaintiff and Tara Healthcare entered into a "Software Services and License Agreement" (referred to here and in Plaintiff's pleading as the "Agreement"). *See* (ECF No. 8-1).[2] The Agreement includes a broad arbitration provision requiring that "Any controversy or claim arising out of or relating to this Services Agreement, or the breach thereof, that cannot be resolved directly between the Parties [(*i.e.*, Plaintiff and Tara Healthcare)], shall be settled by arbitration[.]" *Id.*, p. 9 at ¶ 15. The Agreement also includes a venue provision stating that "Any disputes or claims arising out of this Services Agreement or any other matter related hereto shall be brought into the appropriate court of New Castle County, Delaware or in the United States District Court for the District of Delaware[.]" *Id.*, p. 9 at ¶ 15.

Nonetheless, on April 6, 2021, Plaintiff filed a Complaint in this Court against Tara Healthcare, David Dobkin, Marcus Hansen, and "The Drug Rehab Agency."[3] (ECF No. 1). Plaintiff's original Complaint purported to plead causes of action against all defendants for alleged violations of the Texas DTPA and Business Opportunity Act in relation to the Agreement ((ECF No. 1) at "Count I," pp. 8–9), for common-law fraud in relation to the Agreement ((ECF

---

[2] For the Court's convenient reference a true and correct copy of (ECF No. 8-1), the declaration of David Dobkin and Agreement referenced in the Plaintiff's pleadings, are attached here at Exhibit A.

[3] "The Drug Rehab Agency" appears to be Plaintiff's first attempt to identify MD Media as a defendant, which Plaintiff updated by its First Amended Complaint to "MD Media, LLC d/b/a The Drug Rehab Agency."

No. 1) at "Count II," pp. 9–10), and a declaration that relates to the Agreement under the Texas Uniform Declaratory Judgments Act ((ECF No. 1) at "Count III," pp. 10–11).

On May 4, 2021, Plaintiff requested the Clerk of this Court to make a notation of default as to Tara Healthcare. (ECF No. 6). That same day, the undersigned contacted counsel for Plaintiff advising that Tara Healthcare would defend the suit, requesting an extension of time to respond, advising that service was not properly effected on Tara Healthcare, and offering to mediate or arbitrate Plaintiff's claims. Plaintiff refused to agree to the requested extension, refused to agree to mediation or arbitration, and requested proof that service was not proper.

On May 5, 2021, Tara Healthcare filed its Rule 12(b) Motion to Dismiss citing the arbitration provision of the Agreement. (ECF No. 8). On the same day, the Clerk refused Plaintiff's request to note default by Tara Healthcare, citing improper service. *See* Docket Entry dated May 5, 2021 ("The clerk declines to enter default as service does not appear to comply with the elements of FRCP 4."). Thereafter, Plaintiff sought to dismiss its claims against Tara Healthcare, Dobkin, and Hansen. (ECF No. 7).

Following these events, the undersigned counsel for MD Media, who is also counsel for Tara Healthcare for this matter, advised Plaintiff's counsel of the Agreement's arbitration provision, and offered that MD Media would submit to the arbitration of any claims between Plaintiff, Tara Healthcare, and MD Media if the claims could not be resolved through mediation. Plaintiff refused.

On May 12, 2021, Plaintiff filed a First Amended Complaint in this suit naming MD Media as the only defendant. (ECF No. 10). However, Plaintiff's causes of action are unchanged from its original Complaint that named four defendants, and all of Plaintiff's claims arise from or relate to the Software Services and License Agreement. Plaintiff still purports to seek relief for

alleged violations of the Texas DTPA and Business Opportunity Act in relation to the Agreement ((ECF No. 10) at "Count I," pp. 11–13), relief for common-law fraud in relation to the Agreement ((ECF No. 10) at "Count II," pp. 13–14), and a declaration that relates to the Agreement under the Texas Uniform Declaratory Judgments Act ((ECF No. 10) at "Count III," pp. 14–15).

On May 21, 2021, the undersigned counsel again advised Plaintiff that the broad arbitration provision in the Agreement covers Plaintiff's claims against MD Media, and provided supporting Supreme Court, Fifth Circuit, and Delaware authority. The undersigned reiterated the offer from Tara Healthcare and MD Media to submit to arbitration if the claims between the parties could not be resolved through mediation. Plaintiff again refused.

Accordingly, this Motion to Dismiss is necessary to give effect to the Plaintiff's contractual agreement to submit claims "arising out of or relating to" the Agreement to binding arbitration.

## II. RULE 12(B) MOTION TO DISMISS FOR LACK OF JURISDICTION

### A.  *Relevant Legal Standards – Rule 12(b)(1) and Binding Arbitration Provisions*

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may exercise only jurisdiction expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case or claim for lack of subject-matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the claims. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

"A court can find that subject matter jurisdiction is lacking based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (citation omitted). The trial court is "free to weigh the evidence and satisfy itself" that subject-matter jurisdiction exists. *MDPhysicians & Assocs., Inc. v. State Bd. Of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

Most critical to this case, **in the Fifth Circuit, "a district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration."** *Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014) (emphasis added). "[A] district court may dismiss, with prejudice, rather than stay, an action where all the issues are properly subject to arbitration." *SGC Health Group, Inc. v. Eclinicalworks, LLC*, 3:15-CV-4022-M, 2016 WL 2595109, at *2 (N.D. Tex. May 4, 2016) (Lynn, C.J.) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *see also White v. SoftLayer Techns.*, 2015 WL 5052365, at *6 (N.D. Tex. Aug. 27, 2015) (Lynn, J.) (holding that dismissal of an action with prejudice is appropriate and within the court's discretion when the court determines that all claims are subject to arbitration).

**B.** ***The Court should dismiss this suit with prejudice pursuant to Rule 12(b)(1) because all of the claims Plaintiff alleges arise from or relate to the Agreement and thus, are subject to binding arbitration.***

Plaintiff's claims arise from or relate to a Software Services and License Agreement, effective as of October 1, 2019, which the First Amended Complaint refers to as the "Agreement." *See, e.g.,* (ECF No. 10), ¶ 27. Although Plaintiff did not attach the Agreement to its First Amended Complaint, a true and correct copy was attached to Tara Healthcare's Rule 12(b) Motion to Dismiss ((ECF No. 8)), and is re-attached here for the Court's convenient reference. *See* Ex. A, pp. 4–18. At Section 15, "Arbitration, Governing Law and Jurisdiction for Dispute Resolution," the Agreement sets out a broad arbitration provision requiring arbitration of any dispute "arising out of or relating to" the Agreement, and any award must be entered by a court in Delaware:

> **Any controversy or claim arising out of or relating to this Services Agreement, or the breach thereof, that cannot be resolved directly between the Parties, <u>shall</u> be settled by arbitration** administered by the American Arbitration Association under its Commercial Arbitration Rules applying the laws of the State of Delaware, **and judgment on the award rendered by the arbitrator(s) shall be entered in the Delaware Court of Chancery.**

*See* Ex. A, at p. 9, § 15.[4] Thus, based on the plain language of the Agreement, this Court lacks jurisdiction over—and must dismiss with prejudice—any claim plaintiff alleges which arises out of or relates to the Agreement. *See, e.g., Gilbert*, 751 F.3d at 306 (noting Fifth Circuit has "held that a district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1)" if it is subject to arbitration).

---

[4] "Under the law of this circuit, arbitration clauses covering 'any dispute' related to an agreement or business relationship have been interpreted to be broad arbitration clauses." *Innerwireless, Inc. v. Johnson Controls, Inc.*, CIV. A. 3:07-CV-312-M, 2007 WL 2428591, at *2 (N.D. Tex. Aug. 27, 2007) (Lynn, J.) (citing cases); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (labeling as "broad" a clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement"); *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (clause mandating arbitration of "[a]ny dispute, controversy or claim arising out of or in relation to or in connection with this Agreement or the operations carried out under this Agreement, including without limitation any dispute as to the validity, interpretation, enforceability or breach of this Agreement" is a broad clause); *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 (5th Cir. 1985) ("[i]t is difficult to imagine broader general language than that contained in the ... arbitration clause, 'any dispute' ...").

Here, a cursory review of Plaintiff's allegations in its First Amended Complaint and controlling authority makes clear that *all* of Plaintiff's claims in this lawsuit are subject to arbitration because each claim "aris[es] out of or relat[es] to" the Agreement.[5] When, as here, an arbitration provision is broad, "it is only necessary that the dispute 'touch' matters covered by the [Agreement] to be arbitrable." *Pennzoil Expl. & Prod. Co.*, 139 F.3d at 1068. All of the claims Plaintiff purports to allege against MD Media "touch" matters covered by the Agreement, and the Fifth Circuit has held that claims similar to those Plaintiff purports to allege must be arbitrated under similar broad arbitration provisions.

At Count I, Plaintiff purports to allege MD Media violated the Texas Deceptive Trade Practices Act ("DTPA") in relation to the Agreement both directly, and also through a tie-in to the Texas Business Opportunities Act ("BOA"). (ECF No. 10) at "Count I," pp. 11–13. Plaintiff's purported claims for relief under the Texas BOA as a tie-in to the Texas DTPA should not be treated as separate from Plaintiff's purported Texas DTPA claim.[6] Nonetheless, each of these purported claims touches the Agreement.

The purported direct violations of the DTPA are based on alleged misrepresentations or omissions by MD Media concerning what the Agreement entailed or would provide taken from the "laundry list" found at Texas Business & Commerce Code § 17.46(b). (ECF No. 10), ¶¶ 57, 61. These purported Texas DTPA claims "touch" the Agreement because their adjudication requires, at the very least, examining the Agreement to determine what it does or does not entail

---

[5] Plaintiff's First Amended Complaint names MD Media as the only defendant in this lawsuit. (ECF No. 10). Accordingly, of necessity, Plaintiff's claims in this lawsuit are each a "controversy or claim" which "cannot be resolved directly between" Tara Healthcare and Plaintiff.

[6] The Fifth Circuit has observed that the Texas Business Opportunity Act, Tex. Bus. & Com. Code § 51.302, "does not itself provide a cause of action" but rather "states that violations of its terms give rise to a deceptive trade practice claim under the DTPA[.]" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) "Therefore, the Texas BOA and Texas DTPA claims are properly considered a single claim under the Texas DTPA." *Id.*

or provide. Moreover, Your Honor has concluded that broad arbitration clauses like the provision at issue here cover Texas DTPA claims. *See, e.g., SGC Health Group, Inc.*, 2016 WL 2595109, at *2 (finding that an agreement to arbitrate "any dispute" covered a Texas DTPA claim and dismissing suit with prejudice for lack of jurisdiction) (citing *Commerce Park v. Mardian Construction Co.*, 729 F.2d 334, 338 (5th Cir. 1984)) (claim under Texas DTPA subject to arbitration under FAA).

Plaintiff's allegations relating specifically to the Texas BOA are based on an alleged failure to disclose information that, purportedly, the Texas BOA requires to be disclosed when offering a "business opportunity." (ECF No. 10), ¶ 53 ("Texas prohibits the sale of franchise/business opportunity unless the franchisor provides potential purchaser with required pre-sale disclosure documents."); *see also* Tex. Bus. & Com. Code § 51.003 (defining "business opportunity"). Accordingly, Plaintiff's Texas BOA claims undoubtedly "touch" the Agreement because adjudicating these claims requires, at the very least, examining the Agreement to determine whether it represents a "business opportunity" as that term is defined by the Texas BOA. Purported allegations of statutory violations, such as Plaintiff's direct and tie-in DTPA claims, cannot operate to preclude arbitration. *See, Ommani v. Doctor's Associates, Inc.*, 789 F.2d 298, 300 (5th Cir. 1986) ("[E]nforcement of otherwise valid arbitration clauses cannot be denied solely by virtue of the suggestion that a claim, otherwise comprehended within the scope of an arbitration clause, is also based on the [Texas DTPA]."). Thus, the Agreement's broad arbitration provision covers Plaintiff's purported Texas DTPA and Texas BOA claims.

At Count II, Plaintiff purports to allege fraud or fraudulent inducement <u>related to the</u> <u>Agreement</u>—a claim which necessarily "touches" the Agreement and must be arbitrated. *See, e.g.,* (ECF No. 10), ¶ 62 ("Defendant made numerous material representations to Plaintiff to

induce it to enter into the Agreement." (emphasis added)). The Fifth Circuit has held that broad arbitration provisions cover allegations of fraud because such claims "relate to" the contract. *See, e.g., Ford Motor Co. v. Ables,* 207 Fed. Appx. 443, 447 (5th Cir. 2006) (clause mandating arbitration of "any Claim related to" the contract governed a myriad of tort claims, including fraud); *Bhatia v. Johnston*, 818 F.2d 418, 422 (5th Cir. 1987) (agreement to arbitrate "any controversy ... arising out of or relating to this contract" included fraudulent inducement claim). Thus, the Agreement's broad arbitration provision covers Plaintiff's claims for fraud and fraudulent inducement.

At Count III, Plaintiff purports to seek declaratory relief concerning the Agreement under the Texas Uniform Declaratory Judgments Act. (ECF No. 10), 73–80. This claim necessarily "touches" the Agreement, as Plaintiff requests this Court to make a determination that the Agreement is a "franchise agreement." *See* (ECF No. 10), ¶ 80 ("A determination the Agreement is a franchise agreement will ensure and afford Plaintiff additional non-contractual rights under Texas law."). Under the statute upon which Plaintiff bases its claim, this Court *cannot* issue declaratory relief without examining and construing the Agreement itself. *See* Tex. Civ. Prac. & Rem. Code § 37.004.[7] Thus, the Agreement's broad arbitration provision covers Plaintiff's claim for declaratory relief.

In sum, Plaintiff agreed to a broad arbitration provision, the plain language of which requires Plaintiff to arbitrate any claim that arises out of or relates to the Agreement. Since all of Plaintiff's purported allegations, claims, and causes of action in this lawsuit "touch" the Agreement, the Agreement's broad arbitration provision covers all the claims. Therefore, this

---

[7] The relevant language of this statute provides: "**A person interested under** a deed, will, **written contract**, or other writings constituting a contract or **whose rights, status, or other legal relations are affected** by a statute, municipal ordinance, contract, or franchise **may have determined any question of construction or validity arising under the instrument**, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a) (emphasis added).

Court lacks subject-matter jurisdiction over the Plaintiff's claims, and should dismiss this case with prejudice pursuant to Rule 12(b)(1).

**C.** ***Pursuant to the plain language of the Agreement's broad arbitration provision Plaintiff, as signatory to the Agreement, must arbitrate its claims against nonsignatory MD Media.***

When the arbitration provision at issue is broad, its plain language can mandate that the signatory must arbitrate covered claims against a nonsignatory. As Judge Crane has noted, "[t]he Fifth Circuit has held that the language of an agreement to arbitrate may itself be broad enough to encompass claims against nonsignatories" without resort to theories such as equitable estoppel. *Dale v. Citigroup Glob. Markets, Inc.*, CV M-12-82, 2012 WL 13046848, at *3 (S.D. Tex. June 13, 2012) (Crane, J.) (citing *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 382–83 (5th Cir. 2008)). In *Sherer*, the Fifth Circuit—basing its decision solely on the plain language of a broad arbitration provision—held that if an arbitration provision covers the signatory's claims against a nonsignatory, then the signatory must arbitrate those claims. *Sherer*, 548 F.3d at 383 (terms of agreement compelling arbitration of claims arising from "the relationships which result from the agreement" compelled arbitration of claims against nonsignatory defendant with whom signatory plaintiff had such a relationship, without resort to equitable estoppel).[8]

Here, as in *Sherer*, the arbitration provision at issue is broad—it requires Plaintiff to arbitrate "any" claim "related" to the Agreement. Ex. A, p. 9, § 15. As detailed above, every claim Plaintiff asserts against MD Media in this lawsuit is "related" to the Agreement because all

---

[8] The Agreement chooses Delaware law as its governing jurisprudence. Ex. A, p. 9 at ¶ 15. Delaware law, like the well-established precedent of the Fifth Circuit, recognizes that contracting parties are bound to the unambiguous language of their contracts. *See, e.g., Kerr-McGee Chem., LLC v. Kemira Pigments Oy*, CIV. A. 03-191-GMS, 2003 WL 22299045, at *4 (D. Del. Oct. 7, 2003) (citing *Gentile v. Single Point Financial, Inc.*, 788 A.2d 111, 113 (Del.2001)) ("Delaware state law provides that if the contract is unambiguous it should be given effect as written and the court need not interpret it or explore the parties intent."). "But, where an ambiguity exists concerning the arbitrability of a dispute, it should be interpreted in favor of arbitration." *Id.* (citing *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability").

claims clearly and undeniably "touch" the Agreement, and therefore must be arbitrated. *See* §
II(B), *supra*. Accordingly, this Court lacks jurisdiction over the Plaintiff's claims and should
dismiss Plaintiff's claims with prejudice.

### D.  *Pursuant to the doctrine of equitable estoppel, Plaintiff's claims in this lawsuit must be arbitrated.*

The law of this Circuit is well-established that "pursuant to an equitable estoppel
doctrine, a non-signatory-to-an-arbitration-agreement-defendant can nevertheless compel
arbitration against a signatory-plaintiff." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d
524, 526 (5th Cir. 2000). As the Fifth Circuit explained, there are at least two bases upon which a
signatory to an arbitration agreement may be equitably estopped from denying the arbitrability of
their claims against a nonsignatory:

> First, equitable estoppel applies when the signatory to a written agreement
> containing an arbitration clause must rely on the terms of the written agreement in
> asserting its claims against the nonsignatory. When each of a signatory's claims
> against a nonsignatory makes reference to or presumes the existence of the written
> agreement, the signatory's claims arise out of and relate directly to the written
> agreement, and arbitration is appropriate. Second, application of equitable
> estoppel is warranted when the signatory to the contract containing an arbitration
> clause raises allegations of substantially interdependent and concerted misconduct
> by both the nonsignatory and one or more of the signatories to the contract.
> Otherwise the arbitration proceedings between the two signatories would be
> rendered meaningless and the federal policy in favor of arbitration effectively
> thwarted.

*Grigson*, 210 F.3d at 527 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th
Cir. 1999)). That is, the signatory cannot "have it both ways" by seeking to deny arbitration
applies when the signatory's claims either (a) seek to impose liability on a nonsignatory that
would not exist in the absence of the contract containing the arbitration provision, or (b) allege
interwoven concerted misconduct by a signatory and nonsignatory. *Id.* at 528.[9]

---

[9] The Agreement chooses Delaware law as its governing jurisprudence. Ex. A, p. 9 at ¶ 15. Delaware law, like the
well-established precedent of the Fifth Circuit, recognizes the doctrine of equitable estoppel can preclude a signatory

Here, not only does the plain language of the Agreement require Plaintiff to arbitrate its claims against MD Media, but also Plaintiff's allegations in this lawsuit implicate *both* of the bases for equitable estoppel set forth in *Grigson*. First, "each of [Plaintiff's] claims against [MD Media] makes reference to or presumes the existence of the written agreement." *Id.* at 527. In short, Plaintiff purports to allege that it entered into the Agreement with Tara Healthcare because MD Media made allegedly false representations or failed to disclose information, and even seeks a declaratory judgment concerning the Agreement. *See* (ECF No. 10). As explained above, none of Plaintiff's claims can stand without the Agreement—adjudicating the alleged misrepresentations and construing the Agreement requires, at the very least, examining the Agreement itself. *See* § II(B), *supra*. Thus, Plaintiff's claims relate directly to the Agreement.

Second, application of equitable estoppel is warranted because "the signatory to the contract containing an arbitration clause [(Plaintiff)] raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory [(MD Media)] and one or more of the signatories to the contract [(Tara Healthcare)]." *Grigson*, 210 F.3d at 528. Indeed, Plaintiff's original Complaint in this lawsuit named *both* Tara Healthcare and MD Media as defendants, alleging they engaged in interdependent and concerted misconduct. (ECF No. 1). Although the First Amended Complaint names MD Media as the sole defendant, the allegations of interdependent and concerted misconduct with Tara Healthcare remain. In essence, Plaintiff alleges MD Media and Tara Healthcare, which have the same owners, solicited Plaintiff to enter into the Agreement with Tara Healthcare based on representations that MD Media and Tara

---

from denying its claims against a nonsignatory must be arbitrated. *See, e.g., GNH Group, Inc. v. Guggenheim Holdings, L.L.C.*, CV 19-1932-CFC, 2020 WL 4287358, at *6 (D. Del. July 27, 2020) (citing *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, CIV. A. 2037-N, 2006 WL 2473665, at *5 (Del. Ch. Aug. 22, 2006)) (quoting *Grigson*, 210 F.3d at 527).

Healthcare both knew to be untrue, and promises that MD Media and Tara Healthcare both knew could not be kept.

More specifically, the First Amended Complaint alleges MD Media and Tara Healthcare share common owners—former defendants Marcus Hansen and David Dobkin. (ECF No. 10), ¶ 38; *see also* (ECF No. 7) (dismissing Hansen and Dobkin from this lawsuit). Plaintiff alleges MD Media uses a website to solicit business for Tara Healthcare, operator of the RecoveryDelivered.com platform. (ECF No. 10), ¶ 39 ("Drugrehab.agency is a website owned and run by Marcus Hansen and which is used to solicit business for Recovery Delivered."). Plaintiff alleges that it entered into the Agreement with Tara Healthcare based on MD Media's representations that Plaintiff would receive infrastructure and support to operate a "turn key" drug rehabilitation clinic under the "Recovery Delivered" name, which would include finding service providers and counselors, access to a proprietary online platform, marketing support, licensing, and training. (ECF No. 10), ¶¶ 8, 22; *see also* (ECF No. 10), ¶ 27 ("Based on these and other representations, on October 1, 2019, Plaintiff entered into [the Agreement]."). Plaintiff alleges neither MD Media nor Tara Healthcare provided the infrastructure and support purportedly promised, and that the platform that is the subject of the Agreement is not proprietary. *See, e.g.,* (ECF No. 10), ¶ 32 ("Defendants (sic) wrongfully failed to provide Plaintiff access to medical information for active patients and improperly referred Texas resident patients to outstate providers."), ¶ 31 ("Plaintiff also learned Tara Health[care] did not have any infrastructure or sufficient support staff in place to support a purported turn key business … Credentialing was not pursued or obtained."); (ECF No. 10), ¶ 30 ("These commercially available platforms are not proprietary to Tara Healthcare."). Thus, Plaintiff alleges interdependent and concerted misconduct by both nonsignatory MD Media and signatory Tara

Healthcare. Therefore, Plaintiff is estopped from denying that its claims against MD Media must be arbitrated.

In sum, both of *Grigson's* bases for equitable estoppel are implicated in this case. First, to prevail on its claims Plaintiff "must rely on the terms of the written agreement in asserting its claims against the nonsignatory" MD Media. *Grigson*, 210 F.3d at 527. Second, Plaintiff avers interdependent and concerted misconduct by MD Media, which is not a signatory to the Agreement, and Tara Healthcare, which is not only a signatory to the Agreement but also formerly a defendant in this lawsuit. Accordingly, even if the plain language of the Agreement did not require Plaintiff's claims in this lawsuit to be arbitrated, Plaintiff is estopped from denying its claims against MD Media must be arbitrated. Therefore, this Court lacks jurisdiction of Plaintiff's claims, and must dismiss this suit with prejudice.

**E.**   ***Alternatively, the Court should dismiss this lawsuit pursuant to Rule 12(b)(1) and 12(b)(2) because Plaintiff's First Amended Complaint does not plead sufficient facts to establish the Court has subject-matter and personal jurisdiction.***

Subject to and without waiving the foregoing argument that the Court lacks jurisdiction because all of the claims are subject to binding arbitration, the Court should dismiss this case because Plaintiff has not carried its burden to establish subject-matter and personal jurisdiction. *See Ramming*, 281 F.3d at 161 (noting the plaintiff "constantly" bears the burden of proof on jurisdiction). This Court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (accord). This Court should dismiss this case pursuant to Rule 12(b)(2). The Court should dismiss Plaintiff's suit pursuant to Rule 12(b)(1) and Rule 12(b)(2) because Plaintiff has not established that this Court has subject-matter and personal jurisdiction. Fed. Rs. Civ. P. 12(b)(1), (2).

Here, at the "Jurisdiction and Venue" section of the First Amended Complaint, Plaintiff merely identifies the diversity jurisdiction statute and declares this Court has jurisdiction. (ECF No. 10), ¶ 13. Moreover, Plaintiff alleges Defendant resides or does business outside this District, but alleges no facts implicating that the Texas long-arm statute reaches MD Media, save bare assertions and legal conclusions not supported by any pleaded factual matter, which should receive no deference from this Court. Thus, Plaintiff fails to establish this Court has jurisdiction over the subject matter, the Plaintiff, and the defendant. The case should be dismissed.

### III. RULE 12(B)(3) MOTION TO DISMISS FOR IMPROPER VENUE

Strictly in the alternative, and subject to and without waiving the foregoing arguments, if this Court does not dismiss this case for lack of jurisdiction, the case should be dismissed based on improper venue. Plaintiff's claims arise from and relate to a contract which requires Plaintiff to bring suit in Delaware, and Plaintiff has not pleaded sufficient facts to show Texas is a proper venue. Thus, this case must be dismissed based on improper venue, pursuant to Rule 12(b)(3).

### A. *Relevant Legal Standards – Rule 12(b)(3)*

"A defendant may move the court to dismiss a case because venue is not proper in the district where the case is filed." *OYO Hotels, Inc. v. Maingate Worldwide*, LLC, 3:19-CV-2909-K, 2020 WL 2912198, at *2 (N.D. Tex. June 3, 2020) (Kinkeade, J.) (citing Fed. R. Civ. P. 12(b)(3)). The general venue statute provides that venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

14

28 U.S.C. § 1391(b). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tx.*, 571 U.S. 49, 56 (2013). Section 1391 "makes clear that venue in 'all civil actions' must be determined in accordance with the criteria outlined in that section." *Id.*

Judge Kinkeade has recognized that "[t]here is a split of authority in the Fifth Circuit as to which party bears the burden of proof regarding venue once a Rule 12(b)(3) motion has been made." *OYO Hotels, Inc.*, 2020 WL 2912198, at *2 (citations omitted). "The majority of courts place the burden of establishing venue on the plaintiff." *Id.* This Court should follow that majority, as Judge Kinkeade did in *OYO Hotels*. *See id.* ("This Court will follow the majority.")

"If the court does not hold an evidentiary hearing on the motion, a plaintiff may satisfy its burden by presenting facts that, taken as true, would establish venue." *Id.* (citing *Broadway Nat'l Bank v. Plano Encryption Techs., LLC*, 173 F. Supp. 3d 469, 473 (W.D. Tex. 2016)). "The court must accept as true all allegations in the complaint and resolve all conflicts in the plaintiff's favor." *Id.* (citing *Nuttall v. Juarez*, 984 F. Supp. 2d 637, 642 (N.D. Tex. 2013) (Lynn, J.)). "The court may also consider evidence in the record beyond those facts alleged in the complaint and its proper attachments." *Id.* (citations omitted). "[T]he court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

**B. *The Plaintiff's First Amended Complaint alleges no facts showing venue lies in this District.***

Here, with respect to venue, the Complaint recites only that "Venue is proper in this district pursuant to 28 U.S. Code § 1391." (ECF No. 10), ¶ 14. Yet, venue does not lie in this District under 28 U.S.C. § 1391(b)(1), as defendant is not alleged to reside or have a principal place of business in this District. *See* (ECF No. 10), ¶¶ 13–18. Venue does not lie in this District under 28 U.S.C. § 1391(b)(2), because the Complaint does not allege a "substantial part of the events or omissions giving rise to the claim" occurred in this District.[10] Finally, venue does not lie in this District under 28 U.S.C. § 1391(b)(3) because no defendant is a Texas resident, there are not facts alleged showing that the Texas long-arm statute could reach the defendant and, as explained below, there is another available jurisdiction for a dispute: Delaware. Ex. A, p. 9, § 15 ("Any disputes or claims arising out of this [Agreement] or any other matter related hereto shall be brought into the appropriate court of New Castle County, Delaware or in the United States District Court for the District of Delaware."). Thus, Plaintiff has not established venue lies in this District, and Plaintiff's assertion that venue is proper is not correct.

**C. *Venue does not lie in this District because the venue selection provisions of the contract to which all of Plaintiff's claims relate requires suit be filed in Delaware.***

As detailed above, all of Plaintiff's claims alleged in the First Amended Complaint relate to an alleged contract referred to in the First Amended Complaint as the "Agreement." A true and correct copy of the "Agreement" is not attached to the First Amended Complaint, but is attached to this Motion. Ex. A. Section 15 of the Agreement requires any suit that arises from or relates to the Agreement to be filed in Delaware, stating, in relevant part, as follows:

---

[10] The closest allegation appears to be a cursory and unsupported claim that MD Media has engaged in business in the State of Texas, but there does not appear to be any factual matter alleged which shows any events purportedly giving rise to the Plaintiff's claims occurred in this District. (ECF No. 10), ¶ 18.

16

> **Any disputes or claims arising out of this Services Agreement or any other matter related hereto <u>shall</u> be brought into the appropriate court of New Castle County, Delaware or in the United States District Court for the District of Delaware**, as may be appropriate, and the Parties agree to submit to the in personam jurisdiction and venue of said courts.

*See* Ex. A, p. 9, § 15 (emphasis added). Accordingly, based on the plain language of the Agreement, any lawsuit arising out of or related to the Agreement must be filed in Delaware, not Texas. As explained above, all of the claims in this lawsuit relate to the Agreement. *See* § II(B), *supra*. Therefore, this Court is an improper venue for Plaintiff's claims, which relate to the Agreement, and this case must be dismissed.

## IV. CONCLUSION AND REQUEST FOR RELIEF

Plaintiff's claims are all subject to a binding arbitration agreement. Accordingly, this Court lacks subject-matter jurisdiction over the claims in this lawsuit, and it must be dismissed with prejudice. This case should also be dismissed for lack of jurisdiction because the Plaintiff does not plead sufficient facts to invoke this Court's personal jurisdiction over the parties and subject-matter jurisdiction over the claims. In the alternative, the case should be dismissed based on improper venue, since the Plaintiff pleads no facts that show venue lies in this District, and the First Amended Complaint purports to allege claims arising from an agreement requiring that Plaintiff must file its lawsuit in Delaware. MD Media respectfully requests the Court to enter an Order dismissing this case with prejudice, taxing Plaintiff the costs MD Media incurred in connection with this Motion, and for all other relief to which MD Media may show itself entitled.

Respectfully Submitted,

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS, & AUGHTRY

By:    */s/Justin E. VandenBout*
        Justin E. VandenBout
        *Attorney-In-Charge*
        Texas State Bar No. 24060765
        justin.vandenbout@chamberlainlaw.com
        Pierce T. Cox
        Texas State Bar No. 24082186
        pierce.cox@chamberlainlaw.com
        1200 Smith, Ste. 1400
        Houston, Texas 77002
        Telephone: (713) 654-9672
        Facsimile:  (713) 658-2553

        **COUNSEL FOR DEFENDANT**
        **MD MEDIA, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record in accordance with the District's ECF service rules and the Federal Rules of Civil Procedure on June 8, 2021.

        */s/ Pierce Cox*
        Pierce T. Cox

4117621

18