IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CONA HEALTHCARE LLC, | § | |
|             Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-00785 |
| | § | |
| MD MEDIA, LLC d/b/a | § | |
| THE DRUG REHAB AGENCY | § | |
|             Defendant. | § | |

**MD MEDIA, LLC'S REPLY IN SUPPORT OF ITS RULE 12(b) MOTION TO DISMISS FOR LACK OF JURISDICTION OR, IN THE ALTERNATIVE, <u>MOTION TO DISMISS FOR IMPROPER VENUE</u>**

To the Honorable Chief Judge Barbara M.G. Lynn:

Defendant MD Media, LLC files this Reply in support of its Motion to Dismiss pursuant to Rules 12(b)(1)–(3) (ECF No. 13), showing as follows:

**I. ARGUMENT**

**A.** *The plain language of the Agreement's arbitration provision does not limit the arbitration requirement to disputes "between the parties."*

The arbitration provision at issue clearly provides that "**Any controversy or claim** arising out of or relating to" the Agreement must be arbitrated, without any limitation that the controversy or claim must solely be between the parties to the Agreement. (ECF 8-1, 13-1) (the Agreement), p. 9, ¶ 15. MD Media contends the plain language of this provision means exactly what it says: any controversy or claim arising from or relating to the Agreement—including the claims Plaintiff seeks to bring against non-signatory MD Media by this lawsuit—must be arbitrated. (ECF 13) (MD Media Mot. Dismiss). The Response ignores the plain language, interpreting the clause to require arbitration only for such claims between the "Parties" (defined by the Agreement as Plaintiff and Tara Healthcare, a former defendant in this lawsuit), even though this limitation is not in the Agreement. (ECF 15), § II. That is, Plaintiff's interpretation

1

inserts "between the Parties" into the provision, such that arbitration is required only for "[a]ny controversy or claim [between the Parties] arising out of or relating to" the Agreement. This interpretation must be rejected because it is antithetical to basic principles of contract law, as the Court may not rewrite the contract, and must give force and effect to the plain meaning of an unambiguous instrument. *See, e.g., Tenneco Inc. v. Enter. Products Co.*, 925 S.W.2d 640, 646 (Tex. 1996) ("We have long held that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained."); *Horn v. State Farm Lloyds*, 703 F.3d 735, 738 (5th Cir. 2012) (citing *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006) (applying Texas law)) ("If a contract is unambiguous, we apply its plain meaning and enforce it as written.").[1]

Here, the Response does not contest the validity of the arbitration provision. Nor does it argue the Agreement or arbitration provision is ambiguous. Plaintiff expressly agreed to arbitrate "any" claim or controversy arising from or related to the Agreement, regardless of the counterparty:

> **Any controversy or claim arising out of or relating to this Services Agreement**, or the breach thereof, that cannot be resolved directly between the Parties, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules applying the laws of the State of Delaware, and judgment on the award rendered by the arbitrator(s) shall be entered in the Delaware Court of Chancery.[2]

---

[1] Plaintiff again ignores the requirements of the Agreement, which is governed by Delaware law. (ECF 8-1, 13-1) (the Agreement), p. 9, ¶ 15 ("[T]he validity, construction and effect of the Services Agreement, and all extensions and modifications thereof, shall be construed in accordance with the laws of the State of Delaware"). Delaware law parallels Texas law with regard to the most salient legal principles at issue. *See, e.g., AM Gen. Holdings LLC v. Renco Group, Inc.*, CV 7639-VCS, 2020 WL 3484069, at *5 (Del. Ch. June 26, 2020) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010))("Delaware courts 'will not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal. Parties have a right to enter into good and bad contracts; the law enforces both.'"); *Gentile v. Single Point Financial, Inc.*, 788 A.2d 111, 113 (Del. 2001)) ("Delaware state law provides that if the contract is unambiguous it should be given effect as written and the court need not interpret it or explore the parties intent.").

[2] (ECF Nos. 8-1, 13-1) (the Agreement), p. 9, § 15.

Accordingly, the Court should find unpersuasive Plaintiff's extended disquisition of cases considering arbitration clauses that, unlike the Agreement, contain a "between the parties" limitation. For example, the Response cites *Jody* and *Merrill Lynch*.[3] In these two cases, non-signatories' motions to compel signatories' claims to arbitration were denied.[4] But, unlike the case here, the plain language of the provisions at issue in *Jody* and *Merrill Lynch* limited the arbitration requirement to disputes between the parties:

- "**If <u>you and we</u> [(i.e. the insured and the insurer)] fail to agree** on any determination made by us [(the insurer)] … the disagreement may be resolved through mediation … If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA) …"[5]

- "I agree that **all controversies which may arise <u>between us</u>**, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration."[6]

The Response also cites to a case in which a non-signatory successfully compelled a signatory to arbitration under the plain language of an arbitration provision *despite* the presence of "between the parties" language, as the underlying contract broadened the definition of "parties" to extend beyond those that signed the contract:

---

[3] The *Bridas* case is also cited, but that case is not even tangential to the question before the Court. (ECF No. 15), 8–11. The Response discusses, quotes, and summarizes the Fifth Circuit's analysis of whether a non-signatory (the Government of Turkministan) should be subject to the jurisdiction of an arbitral panel convened for a dispute between signatories (Bridas and the state-owned enterprise Turkmenneft). *Id.*; *see also Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 353 (5th Cir. 2003) ("The first issue we address is whether the Tribunal properly exercised jurisdiction over the Government."). Here, the question is not whether an arbitral panel has jurisdiction over a non-signatory, but whether <u>this Court</u> has jurisdiction over claims Plaintiff <u>expressly agreed to arbitrate</u>.

[4] MD Media has not requested the Court to compel arbitration, as MD Media contends that this Court lacks jurisdiction over this lawsuit. (ECF 13) (MD Media Mot. Dismiss). Should the Court retain jurisdiction over this case, MD Media reserves its right to move the Court to compel arbitration at a later time.

[5] *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 629 (Tex. 2018).

[6] *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 188 (Tex. 2007) (emphasis added).

> "Arbitrable disputes include **any and all controversies or claims <u>between the parties</u>**[7] of whatever type or manner, including without limitation, all past, present and/or future credit facilities and/or agreements involving the parties. This arbitration provision shall survive any termination, amendment, or expiration of the agreement in which this agreement is contained, unless all of the parties expressly agree in writing."[8]

The arbitration clauses at issue in the *Jody*, *Merrill Lynch*, and *Rubiola* cases are different kinds of apples, and the clause at issue in this case is an orange. Unlike those cases, the plain language of the Agreement's arbitration provision is not limited to *only* disputes "between the parties." Rather, the plain language of the Agreement requires Plaintiff to arbitrate <u>*any*</u> dispute arising out of or relating to the Agreement. Plaintiff should be held to the terms of the Agreement. Specifically, all of Plaintiff's claims in this lawsuit arise from or relate to the Agreement because the claims "touch" the Agreement and, therefore, must be arbitrated. *See, e.g.,* (ECF No. 13) (MD Media Mot. Dismiss), § II(B) (detailing how, as matters of law and of fact Plaintiffs' claims touch the Agreement).

In sum, Plaintiff is bound by the terms of its unambiguous, valid arbitration agreement. Those terms require the arbitration of "**<u>Any controversy or claim</u>** arising out of or relating to "the Agreement, not just disputes "between the Parties." Following the precedent laid out in *Sherer v. Green Tree Servicing, LLC*, this Court should interpret the plain language of the

---

[7] With respect to "parties," the *Rubiola* contract provided that: "Rubiola Mortgage Company, and each and all persons and entities signing this agreement or any other agreements between or among any of the parties as part of this transaction. 'The parties' shall also include individual partners, affiliates, officers, directors, employees, agents, and/or representatives of any party to such documents, and shall include any other owner and holder of this agreement." *In re Rubiola*, 334 S.W.3d 220, 222 (Tex. 2011).

[8] *In re Rubiola*, 334 S.W.3d at 222 (emphasis added). The *Rubiola* Court stated that "[t]he arbitration agreement … expressly provides that certain non-signatories are to be parties to the agreement." *In re Rubiola*, 334 S.W.3d at 224. Relying on the Fifth Circuit's reasoning in *Sherer*—which should also control this case—the *Rubiola* Court also found that the plain, express language of the arbitration provision required a signatory to arbitrate its covered claims against a non-signatory. *See id.* ("Because the arbitration agreement expressly provides that certain non-signatories are considered parties, we conclude that such parties may compel arbitration under the agreement. *See Sherer*, 548 F.3d 379 at 382 (noting that trial court's application of equitable estoppel to determine whether non-signatory might compel arbitration, was unnecessary because the terms of the Loan Agreement clearly identify when a party might be compelled to arbitrate with a non-signatory)."

Agreement—as the contract is <u>actually</u> written, not as Plaintiff now wishes it had been—as requiring all claims in this suit to be arbitrated. *See* 548 F.3d 379, 382–83 (holding plain language of arbitration agreement broad enough to require signatory to arbitrate claims against nonsignatory). Since all Plaintiff's claims must be arbitrated, this case should be dismissed with prejudice. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

**B.   *Plaintiff's claims against MD Media are inseparable from the Agreement.***

Seeking to duck the arbitration requirement, the Response urges that Plaintiff's claims are not "related to" the Agreement, contending that Plaintiff's fraud and Texas DTPA claims (both direct and Texas Business Opportunity Act tie-in claims) sound in tort and statutory violations. *See* (ECF No. 15), §§ I(a), III(a). Notably, the Response's arguments that Plaintiff's claims are not "related to" the Agreement ignore that Plaintiff seeks a declaratory judgment concerning the Agreement. (ECF 10), ¶¶ 73–80 ("Count III[:] Declaratory Relief"). These arguments also do not appear to have an answer for the Fifth Circuit precedent and prior decisions of this Court cited in MD Media's Motion holding that, as a matter of law, claims sounding in misrepresentation or omission, such as fraud and DTPA violations, are "related to" the contracts to which the alleged misrepresentations and omissions lead. *See* (ECF No. 13), pp. 7, 8.[9]

Indeed, here, Plaintiff's claims are inextricably linked to the Agreement, as demonstrated by the pleaded facts. Plaintiff alleges MD Media misrepresented and omitted information about a business opportunity which caused Plaintiff to enter into the Agreement with Tara. *See, e.g.,* (ECF No. 10), ¶¶ 8, 9, 20–27, 38–50. These alleged misrepresentations and omissions that

---

[9] *Citing SGC Health Group, Inc.*, 2016 WL 2595109, at *2 (finding that an agreement to arbitrate "any dispute" covered a Texas DTPA claim and dismissing suit with prejudice for lack of jurisdiction); *and Ford Motor Co. v. Ables,* 207 Fed. Appx. 443, 447 (5th Cir. 2006) (clause mandating arbitration of "any Claim related to" the contract governed a myriad of tort claims, including fraud) and *Bhatia v. Johnston*, 818 F.2d 418, 422 (5th Cir. 1987) (agreement to arbitrate "any controversy ... arising out of or relating to this contract" included fraudulent inducement claim)).

allegedly caused Plaintiff to contract with Tara apparently form the entire basis of Plaintiff's claims against MD Media. *See, e.g.,* (ECF No. 10), ¶¶ 52–60, 63–70 (listing purported misrepresentations and omissions). Plaintiff's allegations do not simply refer to the Agreement. Without the Agreement, Plaintiff cannot prove that it did not receive what was promised, or that a disclosure was not made that should have been.

As a practical matter, it is simply not possible to determine if a fraud claimant (or Texas DTPA/BOA claimant) did not receive what was promised (or failed to receive information it should have) without evaluating what was ultimately delivered. In this case, Plaintiff alleges that MD Media was selling a franchise agreement and that MD Media's misrepresentations or omissions caused it to enter into the Agreement with Tara. (ECF No. 10), ¶ 27 ("Based on these and other representations, on October 1, 2019, Plaintiff entered into [the Agreement]."); ECF No. 10), ¶ 44 ("The Agreement, despite being cast as a 'software services and license agreement', is in fact a franchise agreement."). Without evaluating the Agreement, one cannot determine whether Plaintiff did not get what MD Media allegedly promised, nor whether the Agreement is a franchise agreement. In sum, the Plaintiff's claims are inextricably linked to the Agreement, and the Court should not be swayed by the Response's attempt to decouple Plaintiff's causes of action from the Plaintiff's factual allegations.

**C.** ***Plaintiff fails to point to or provide additional facts that would establish venue is proper in this District.***

The Response incorrectly characterizes MD Media's venue challenge as a "frivolous," "hollow," and a "throw-away" argument. (ECF No. 15), pp. 23–24. The Response also incorrectly claims that MD Media's venue challenge is made "in bad faith" because MD Media "does not contest jurisdiction and that claim has been waived." (ECF No. 15), p. 24. To the contrary, MD Media expressly articulates jurisdictional challenges under Rules 12(b)(1) and

12(b)(2). (ECF No. 13) § II ("Rule 12(b) Motion to Dismiss for Lack of Jurisdiction"). Thus, Plaintiff's waiver argument is unavailing.

Moreover, as fervently as the Response pounds the table with rhetoric, Plaintiff fails to carry the burden on venue. *OYO Hotels, Inc. v. Maingate Worldwide*, LLC, 3:19-CV-2909-K, 2020 WL 2912198, at *2 (N.D. Tex. June 3, 2020) (Kinkeade, J.) (following majority in intra-circuit split, placing burden to prove venue on *plaintiff*). The Response cites no law supporting that Plaintiff's conclusory assertion is sufficient to meet the requirements of the venue statute. *See* (ECF No. 10) (First Am. Compl.), ¶ 14 ("Venue is proper in this district pursuant to 28 U.S. Code § 1391."). Likewise, the Response points to no pleaded facts showing MD Media resides in this District—as required by 28 U.S.C. § 1391(b)(1)—or that any acts or omissions giving rise to this suit occurred in this District—as required by 28 U.S.C. § 1391(b)(2). Instead, Plaintiff apparently seeks to establish venue under 28 U.S.C. § 1391(b)(3). To this end, the Response regurgitates allegations relating to Texas, generally, in an apparent effort to establish that this Court has personal jurisdiction over MD Media. (ECF No. 15), p. 23–24. However, venue is only proper under 1391(b)(3) if "if there is no district in which an action may otherwise be brought." 28 U.S.C. § 1391(b)(3). This case does not meet that condition. If Plaintiff's claims are not required to be arbitrated, they could be brought in MD Media's home District. Thus, Plaintiff has not established in its pleading or by its Response that venue lies in this District.

In sum, Plaintiff offers neither facts nor law to support its conclusory assertion that venue is proper in this District. Plaintiff has already amended its pleading once. *See* (ECF No. 10) (First Am. Compl.). Further amendment would be futile, and it seems Plaintiff recognizes as much. Plaintiff neither requests leave for further amendment, nor describes the facts it would allege if

given the opportunity to try a third time to invoke venue in the Northern District of Texas. Thus, the Court should dismiss this lawsuit.

## II. CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated here and in MD Media's Motion to Dismiss Pursuant to Rule 12(b), or, in the Alternative Motion to Dismiss for Improper Venue (ECF No. 13), MD Media respectfully requests the Court to enter an Order dismissing this case with prejudice, taxing Plaintiff the costs MD Media incurred in connection with this Motion, and for all other relief to which MD Media may show itself entitled.

Respectfully Submitted,

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS, & AUGHTRY

By: */s/Justin E. VandenBout*
Justin E. VandenBout
*Attorney-In-Charge*
Texas State Bar No. 24060765
justin.vandenbout@chamberlainlaw.com
Pierce T. Cox
Texas State Bar No. 24082186
pierce.cox@chamberlainlaw.com
1200 Smith, Ste. 1400
Houston, Texas 77002
Telephone: (713) 654-9672
Facsimile: (713) 658-2553

**COUNSEL FOR DEFENDANT
MD MEDIA, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record in accordance with the District's ECF service rules and the Federal Rules of Civil Procedure on July 8, 2021.

*/s/ Pierce Cox*
Pierce T. Cox

4150802.v1