# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

**CONA HEALTH, LLC**
**And Chris Meyer,**
**Plaintiffs,**

Civil Action No. 3:21-cv-785

**PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

**v.**

**MD MEDIA, LLC doing business as**
**THE DRUG REHAB AGENCY**

**Defendant**

_____/

## PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

To the Honorable Chief Judge Barbara M.G. Lynn:

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiff respectfully moves the Court for leave to file the attached 2nd Amended Complaint.

(1) Federal Rule Civil Procedure Rule 15 provides that "a party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

(2) Plaintiffs move to file the Amended Complaint within the time permitted by the Court in the scheduling order.

(3) Allowing Plaintiffs to file the Amended Complaint would serve justice and promote judicial efficiency.

(5) Plaintiff sought concurrence from counsel with respect to the proposed Amendment. Counsel for Defendant did not respond.

(6) Through the 2nd Amended Complaint, Plaintiffs seek to:

   (a) Add Plaintiff's majority owner Chris Meyer as an individual party to this suit.

   (b) Include a request for damages in Meyer's name for non-economic damages as permitted under the Texas Deceptive Trade Practices Act;

   (c) Correct the date of the applicable controlling Agreement between the parties from December 1, 2019 to the date it was signed which is June 29, 2020;

   (d) Correct typographical errors in Cona Health LLC name, which the First Amended petition incorrectly referred to as Cona Healthcare LLC;

   (e) Attach copies of the controlling Agreement;

   (f) Add minor factual allegations to clarify and support diversity jurisdiction over the parties specifically the citizenship of the LLC Members; and

   (g) Add some minor non-dispositive factual allegations to correct the factual timeline and the narrative.

(7) Pursuant to Local Rule, no brief in support will be filed with this Motion.

WHEREFORE:  Plaintiff's request the Court enter an order permitting Plaintiffs to file this 2nd Amended Complaint.

Respectfully submitted:                    ___/s/Christopher Koch_____
                                           Christopher Koch
                                           Chris Koch Law PLLC
                                           State Bar No. 24073637
                                           Address: 1100 Lake Carolyn Pkwy
                                           Ste 3066
                                           Irving, TX 75039
                                           ck@klgroupsolutions.com
                                           klgroupsolutions.com
                                           Tel:972-302-8585

CERTIFICATE OF SERVICE

I certify that on November 9, 2021 a true and correct copy of Plaintiffs' Complaint was served to each person listed below by e-file through the court's e-file system.

Respectfully Submitted:
Chris Koch Law/Koch Law Group

/s/     Christopher Koch

Dated:  November 9, 2021

CERTIFICATE OF CONFERENCE

I certify that I attempted to meet and confer with counsel on this matter and requested concurrence in the requested relief by email dated November 3, 2021.  Counsel for Defendant did not respond or concur.

Respectfully Submitted:

Chris Koch Law/Koch Law Group

/s/     Christopher Koch

Dated:  November 9, 2021

# EXHIBIT A
# PROPOSED 2ND AMENDED COMPAINT (WITHOUT EXHIBITS)

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

**CONA HEALTH, LLC**                  Civil Action No. 3:21-cv-785
**And Chris Meyer,**
**Plaintiffs,**

                                     **PLAINTIFFS' FIRST AMENDED COMPLAINT**

**v.**

**MD MEDIA, LLC doing business as**
**THE DRUG REHAB AGENCY**

**Defendant**

### PLAINTIFFS'S SECOND AMENDED COMPLAINT FOR VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT AND FRAUD

Plaintiffs, CONA HEALTH LLC ("CONA HEALTH') alleges as follows.

<u>INTRODUCTION</u>

1. This case derives from Defendant's unlawful promotion, marketing and sale of a franchise opportunity in contravention of the Texas Business Opportunities Act and The Federal Trade Commission Franchise Rules. The violation of the Texas Business Opportunities Act is a per se violation of the Texas Deceptive Trade Practices Act.

2. The fraud perpetrated by Defendants here reflects the harm sought to be prevented by State and Federal franchise laws across the country:  A Franchisor/Promoter (Defendant) made fraudulent promises of financial gain to an unsuspecting investor (Plaintiffs) to elicit significant upfront investment and profit of the sale of the franchise business opportunity, with virtually zero opportunity for the investor to have sufficient long-term success to recoup that investment.

3. In the instant case, Defendant "sold" to Plaintiffs for $50,000 the exclusive franchise rights in Texas to operate a Medical Assisted Treatment facility under the brand Recovery Delivered (the "RD Franchise Rights").

4. Plaintiffs' RD Franchise Rights were terminated by Recovery Delivered four months after the five year contract was signed and after Meyer paid Recovery Delivered $50,000.

5. Almost immediately Recovery Delivered terminated Plaintiff, Defendant marketed and, and apparently re-sold, the sale of Texas RD Franchise Rights for $250,000. Defendant is currently actively hiring staff in Texas to support RD Franchise operations in Texas for this new enterprise.

6. The Texas BOA, which by definition must be liberally construed, seeks to protect persons against false, misleading or deceptive practices. Section 51.003 defines business opportunity as a sale or lease for an initial consideration of more than $500 of products or services to be used by the purchaser to begin a business in which the seller represents the purchase will or is likely to earn a profit in excess of the investment and the seller will help provide uses for the services (e.g. sales opportunities), marketing assistance or other substantial assistance.

7. The Texas business opportunity test largely mirrors the legal definition for franchising under federal law which provides any contract which has these characteristics is a franchise regardless how the contract is defined (e.g. license, marketing agreement, etc): (1) a contract that requires upfront payment, (2) the right to operate, market or sell the other party's branded product and (3) the "franchisor" provides substantial business assistance. In fact, the BOA specifically directs Courts to look to federal franchise principals to interpret the BOA.

8. At the relevant times, Defendant's Drugrehab.agency website promoted the Recovery Delivery franchise opportunity and contained explicit, specific representations that, as a matter of law, satisfied all of the above elements of (1) "business opportunities" under Texas law **and** (2) the Federal Franchise Rule 16 CGR Part 436.

9. For example, Drugrehab.agency touted the Recovery Delivered opportunity as a "turn-key" operation wherein the "Recovery Delivered Team manages virtually everything needed to open and run your center profitably". Examples of the "virtually everything" Recovery Delivered would do was promoted by Drugrehab.agency to include:

   a. Finding MAT (medical) service providers/employees,

   b. Access to and training on their "proprietary" telemedicine, EHR and billing solutions,

   c. Marketing for the facility to drive new clients,

   d. Finding addiction counselors,

   e. Training on and automated federal compliance standards and reporting, and

   f. Managing all pharmacy needs.

10. Drugrehab.agency also defined the initial investment, first $50,000 and later $250,000 and that the purchaser could or would be likely to earn profits of $420,000 in year 1, $1,200,000 in year 2 and $3,100,000 in year 3.

11. On December 6, 2020 Plaintiffs counsel notified Defendant of the violation of the Texas Business Opportunity Act, warned of an impending Texas Deceptive Trade Practice Claim and claim for Recission of the underlying agreement and issued a broad preservation of evidence notice.

12. Defendant failed to respond to that and follow up demands. ***Defendant did however proceed to scrub and eliminate all references to the Recovery Delivered Franchise opportunity from its website.***

13. In this process of spoliation, Defendant tacitly acknowledged what is otherwise obvious- it was promoting the sale of franchises illegally under Texas and Federal law. Specifically, and by way of illustration not limitation, Defendant and Recovery Delivered ignored and failed to comply with basic franchise disclosure requirements, including but not limited to failing to prepare, deliver or register Federal Franchise Disclosure Document. In short, Defendant's actions caused precisely the harm the franchise laws seek to protect against.

Venue and Jurisdiction

14. This Court has jurisdiction over this action pursuant to 28 U.S. Code §1332 and 28 U.S. Code §2201.

15. Venue is proper in this district pursuant to 28 U.S. Code §1391.

16. The amount in controversy exceeds $500,000.00.

17. Plaintiffs are a Texas based LLC, and conducts systematic and continuing business in Texas. Cona Health is owned by Chris Meyer, a California citizen and John Delores, a Nevada citizen.

18. Defendant is, upon information and belief a LLC filed in a State other than Texas. MD Media LL is owned by its Founder and CEO, Marcus Hansen who is a citizen of Colorado.

19. Complete diversity of citizenship exists.

20. MD Media has engaged in systematic and continuous business in the State of Texas including direct solicitation of business opportunities for exclusive franchises in Texas, marketing efforts within Texas, recruitment and hiring of employees in Texas and concerted sales efforts in connection with the facts and circumstances underlying this case.  MD Media has purposefully availed itself of business opportunities in Texas therefore this court has both personal and general jurisdiction.

## SUMMARY

21. This case involves claims of fraud, violation of the Texas Business Opportunity Act through the Texas Deceptive Trade Practices Act, and a request for Declaratory Judgment under State and Federal law. Plaintiffs intends to modify this Complaint to include a claim against a yet to be identified surety bond which Defendants were obligated to obtain under the Texas Business Opportunities Act but which, on information and belief, they did not.

### Background

22. Defendant MD Media promoted, marketed and sold, among other things, an online recovery and drug rehabilitation program under the brand name Recovery Delivered.

23. Sometime in 2019 Plaintiffs approached Drug Rehab Agency about consulting on a brick and mortar rehabilitation clinic it intended to open.  Drug Rehab Agency suggested an alternative to the brick and mortar model, to wit, Recovery Delivered. **EXHIBIT A-** Emails from Dobkin and Hansen discussing Recovery Delivered financial model.

24. Defendant promoted Recovery Delivered to Plaintiffs as a "turn key" platform for "running a medical assisted treatment facility" designed to provide "the gold standard in addiction treatment".  **EXHIBIT B,** screenshots of since-deleted MD Media website.

25. Defendant represented to Plaintiffs Recovery Delivered and MD Media would provide all material and services needed to open and run a recovery clinic, including licensing access to Defendant's Recovery Delivered's branded and "proprietary" online portal.

26. The substantial business control and assistance Recovery Delivered and MD Media committed to provide Plaintiffs also included, but was not limited to, marketing, listing Plaintiffs in Defendant's directory, exclusive use of the Recovery Delivered brand in Texas, issuing 8 press releases about the new locations in Texas, providing on the ground training, training on referral program outreach, implementing Plaintiffs' medical provider into its billing system, acquiring third party payers (known as "credentialing"), providing timely onboard training and a fully staffed help desk to resolve problems as they arose.

27. Defendant also represented to Plaintiffs it had the staff and infrastructure in place to support Plaintiffs as a turn key operation and that, based on Defendants' experience, Plaintiffs (1) would be operational in 60 days (2) would see a return on investment within 6 months (3) have first year revenue in excess of $400,000 (4) would not require any real capital investment required to open a rehabilitation clinic beyond a small startup fee paid to Defendants and (5) would be a profitable long term relationship between the parties.

28. Although Defendant stated the platform on which Recovery Delivered was proprietary and developed on its own, it refused to show the platform to Plaintiffs stating that its policy was that it would not show the platform prior to receiving a signed contract for services because it was afraid prospective customers would copy or reverse engineer the platform. As it turns out, Defendant was simply actively trying to conceal- until it had a check in its hands, that the Recovery Delivered was simply a compilation of third party software common in the health care industry.

29. Based on these and other representations, on October 1, 2019 Plaintiffs entered into a Software Services and License Agreement with Tara Healthcare (the "2019 Agreement"). **EXHIBIT C** Under the 2019 Agreement, Plaintiffs was required to pay an initial fee of $50,000, which it paid. The initial term of the 2019 Agreement was five years and at the time it was entered into the parties contemplated Cona would operate the Recovery Delivered Franchise in California.

30. The 2019 Agreement was twice superseded by subsequent agreements, all with identical terms. The third and final Agreement was executed by the parties on June 26, 2020 (the "Agreement"). **EXHIBIT D**. By this time, the parties agreed Cona Health would operate the Recovery Delivered operation in Texas. Cona finally went "live" and started referring patients in July 2020.

Termination

31. Plaintiffs timely performed all of its obligations under the Agreement.

32. Plaintiffs was not operational until seven months after executing the 2019Agreement but did, ultimately, commence treating patients in Texas for opiate addiction.

33. After signing the 2019 Agreement, Plaintiffs learned the Recovery Delivered platform was not unique or proprietary. Rather Recovery Delivered's "technology" consisted of bundled third party applications- an EMR platform that was commercially available and licensed to Defendant by Elation Health and a patient communication app from Spruce Health. These commercially available platforms are not proprietary to Tara Healthcare.

34. Plaintiffs also learned Tara Healthcare did not have any infrastructure or sufficient support staff in place to support a purported turn key business. By way of illustration only, requests to the "help line" simply went unanswered. Emails to Recovery

Delivered's principals similarly went unanswered. Simple press releases were not issued. Credentialing was not pursued nor obtained.

35. Recovery Delivered wrongfully failed to provide Plaintiffs access to medical information for active patients and also improperly referred Texas resident patients to outstate providers.

36. Plaintiffs repeatedly encouraged and urged Recovery Delivered and Defendant to provide required services necessary to start up and meet promised patient and revenue targets. The complaints and request for help went largely ignored.

37. Plaintiffs also offered to provide some services on its own, for example, billing. Recovery Delivered did not respond to this request.

38. On October 28, 2020 Recovery Delivered terminated the Agreement with Plaintiffs. A copy of the Termination is attached as **EXHIBIT E**.

39. Recovery Delivered did not terminate the Agreement for "cause".  The termination notice did not identify any breach on Plaintiffs' behalf and did not demand any cure of a purported breach.

40. Defendants informed Plaintiffs it would not return the $50,000 fee paid just a few months earlier.

The Recovery Delivered Franchise Model As Advertised and Marketed by

MD Media LLC and Drugrehab.agency.

41. Upon information and belief, Tara Healthcare is owned and operated by Marcus Hansen and David Dobkin.

42. Drugrehab.agency is a website owned and run by Marcus Hansen and which is used to

solicit business for Recovery Delivered and provide services for Recovery Delivered.

For example, the website provides, in part

> "The Drug Rehab Agency has partnered with RecoveryDelivered.com, to provide
> options to entrepreneurs that would like to enter the addiction space, but don't
> have $1 Million and 12 months to wait to make it happen"

> https://www.drugrehab.agency/drug-rehab-center-franchise

43. In practice, MD Media acted on behalf of Recovery Delivered. For example, when the

parties pivoted from Cona providing services in California to Texas, Marcus Hansen on

behalf of MD Media noted:

> Hi Chris,
> I had a conversation with David and it looks like we are pivoting and for
> you to take over Texas. As of right now, we can provide you with the
> entire state. We also, already have the doctor and NP's in place. SO, I
> need you to tell me you are 100% in and want to use your $50,000 to enter
> Texas, not California. Once that email is sent we will move forward and
> get everything handled ASAP.

> Oh, there have been four inquiries today in Texas. Just a heads up.

> Best, Marcus Hansen - CEO The Drug Rehab Agency

> **EXHIBIT F** Hansen February 19, 2020 email.

44. According to the drugrehab.agency website - the initial investment for the Recovery

Delivered "franchise" increased from $50,000 to $250,000 – an increase of 500% since

Cona Health signed its agreement just a year ago. https://www.drugrehab.agency/drug-

rehab-center-franchise.

45. The Hansen Recovery Delivered website also provides in part:

> **POSSIBLE ANNUAL REVENUE**

> Like any business, what you put in, is what you get out. However, with the growing demand
> for services in all 50 states your new rehab business 3 year plan could look like this:

       **Year 1- 420,000**
       **Year 2- $1.2 million**
       **Year 3- 3.1 million**

       **Results vary [SIC] of course, but the way Recovery Delivered has structured the deal, its turn key.**

**HOW LONG DOES IT TAKE TO INTEGRATE AND LICENSE?**

**One large benefit to operating a franchise recovery center rather than starting your own inpatient facility is the timeline. A typically recovery center can take 6-8 months to get licensed and open. Recovery Delivery says it can all happen within 60 days for their franchise model.**

**WHAT DOES IT COST?**

**Recovery Delivered has set its initial investment cost at $250,000 as well as $500,000 in assets. RecoveryDelivered.com is currently getting between 20-50 patients a day and handles everything you need to get started in 60 days.**

       **EXHIBIT B,** screenshots of drugrehab.agency website relative to Recovery Delivered**.**

46. The representations in the drugrehab.agency website largely mirror the representations and promises made to Plaintiffs prior to signing the Agreement with the exception the promises made to Plaintiffs were concrete and purportedly based on actual Recovery Delivered experience.

47. *All of the foregoing references have since been deleted from the drugrehab.agency website*.

48. The Agreement, despite being cast as a "software services and license agreement", is in fact a Business Opportunity and/or franchise agreement.

    a. The Agreement granted Plaintiffs the rights to conduct business using the Recovery Delivered trademark and distribute and deliver goods and services that bear or are associated with that trademark.

    b. The Agreement required Plaintiffs to pay the $50,000 fee within six months of signing the Agreement, which it did.

c. Under the Agreement, pursuant to its terms and in practice, Defendant Tara Healthcare offered significant control and assistance to substantial aspects of Plaintiffs' business including among other things, dictating use of a particular electronic medical record platform ("EMR"), Defendants' billing platform and services, third party credentialing and marketing plans.

49. Franchises are governed by the Federal Trade Commission. The BOA specifically incorporates the FTC rules as guidance in contemplating the applicability of the BOA Business Opportunity laws. The FTC franchise rules require the franchisor supply the purchasing franchisee with a Franchise Disclosure Document (FDD) no less than 10 days prior to signing the franchise agreement.

50. Defendant and Recovery Delivered did not give Plaintiffs an FDD and did not provide to Plaintiffs any pre-sale disclosure document of any kind despite Plaintiffs request for a pro-forma.

51. Texas law does not require franchisors to register an FDD, however prior to selling franchise rights in Texas prospective franchisors must comply with the Texas Business Opportunity Law or file an exemption to it.

52. Upon information and belief, Defendant and Recovery Delivered did not file any exemption to the Texas Business Opportunity Act. Defendant did not provide Plaintiffs any required pre-sale disclosure document.

53. Failure to comply with the Texas Business Opportunities Act creates a private right of action for violation of the Texas Deceptive Trade Practices Act. Tex. Bus. & Com. Code §§ 17.46

54. Plaintiffs are entitled to recover damages from Defendant for violation of the Texas Business Opportunities Act and violation of the Texas Deceptive Trade Practices Act.

## Count I

## VIOLATION OF TEXAS BUSINESS OPPORTUNITIES ACT AND TEXAS DECEPTIVE TRADE PRACTICES ACT

55. Plaintiffs restate and incorporate the preceding allegations.

56. Defendant promoted, marketed and sold a franchise opportunity to Plaintiffs.

57. Texas prohibits the sale of franchise/business opportunity unless the franchisor provides potential purchasers with required pre-sale disclosure documents.

58. Defendant did not provide required pre-sale disclosure documents to Plaintiffs and did not file a Business Opportunity Exemption Notice; therefore, it violated the Texas Business Opportunities Act.

59. Failure to comply with the Texas Business Opportunities Act creates a private right of action for violation of the Texas Deceptive Trade Practices Act. Tex. Bus. & Com.Code §§ 17.46

60. Plaintiffs are consumers for the purposes of the Texas Deceptive Trade Practices Act.

61. The Texas Deceptive Trade Practices Act makes it illegal for a seller or franchisor to "represent [ ] that goods or services have...characteristics [or] benefits . which they do not have" or to "fail[ ] to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not

have entered had the information been disclosed." Tex. Bus. & Com.Code §§ 17.46(b)(5), (b)(24).

62. Liability of Defendant under the Texas BOA and Texas Deceptive Trade Practices Act is not dependent on and is exclusive of any contractual privity between Plaintiffs and Defendant.  Defendant has independent liability under these acts notwithstanding any additional independent claims Plaintiffs may have with Tara Healthcare.

63. In fact, the Agreement with Tara Healthcare is void under the law and Plaintiffs intend to seek Recission against Tara Healthcare.

64. In addition to failing to provide the required disclosures, Defendants misrepresented the characteristics and benefits of the goods and services it sold including, but not limited to, misrepresenting:

   a.  Its Recovery Delivered platform was proprietary and homegrown;

   b.  It had the infrastructure and sufficient support staff in place to support a purported turn key business and provide all start up services;

   c.  It could make Plaintiffs be operational in 60 days after signing the Agreement;

   d.  Defendant would promptly process and obtain credentialing for Plaintiffs;

   e.  Defendant had existing customers that opened within 60 days of contract signing and had year 1 revenue in excess of $400,000;

   f.  Defendant would issue 8 press releases on behalf of Plaintiffs; and

   g.  Plaintiffs would be referred all patients in Texas during the term of the Agreement

65. Plaintiffs relied on these representations, which were untrue at the time made, and Plaintiffs was damaged as a result of that reliance

## Count II

### FRAUD AND FRAUDULENT MISREPRESENTATION

66. Plaintiffs restate and incorporate the preceding allegations.

67. Defendant made numerous material representations to Plaintiffs to induce it to enter into the Agreement.

68. Defendant knowingly, willfully and fraudulently failed to disclose its ownership interest in Recovery Delivered.

69. Defendant knowingly, willfully and fraudulently represented its platform was proprietary to and developed by it.

70. Defendant knowingly, willfully and fraudulently represented it had the infrastructure or sufficient support staff in place to support a purported turn key business and provide all start up services

71. Defendant knowingly, willfully and fraudulently represented Plaintiffs would and could be operational in 60 days after signing the Agreement.

72. Defendant knowingly, willfully and fraudulently represented Defendant would and could promptly obtain credentialing for Plaintiffs.

73. Defendant knowingly, willfully and fraudulently represented Defendant had existing customers that opened within 60 days of contract signing and had year 1 revenue in excess of $400,000.

74. Defendant knowingly, willfully and fraudulently represented it the resources and capacity to issue 8 press releases on behalf of Plaintiffs during start up.

75. Defendant knowingly, willfully and fraudulently represented it would refer all Texas based prospective patients to Plaintiffs.

76. Plaintiffs has been damaged as a result of its reliance on Defendant misrepresentations and is entitled to recover from Defendants for its damages.

### Count III

### DECLARATORY RELIEF

77. Plaintiffs restate and incorporate the preceding allegations.

78. Chapter 37 of the Texas Civil Practice and Remedies Code and 28 U.S. Code §2201provide a party may seek declaratory judgment to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations.

79. § 37.04 of the Tex. Civ. Prac. & Rem. Code specifically authorizes the Court to determine parties' rights and obligations related to franchises.

80. Defendant, upon information and belief, denies the Agreement constitutes a franchise.

81. The drugrehab.agency website terms, before it was scrubbed, specifically and conclusively establish MD Media LLC was promoting for sale a "business opportunity" and "franchise" opportunity.  Indeed MD Media promised a branded, turn key business startup business, with expected returns in exchange for an initial fee.

82. These representations, alone, constitute an actionable violation of the Texas Business Opportunity Act and Texas Deceptive Trade Practices Act.

83. The question of whether the Recovery Delivered business model is a franchise agreement and thus subject to the disclosure requirements of the Texas Business Opportunities Law is a question of law to be decided by the Court.

84. A determination the Agreement is a franchise agreement will ensure and afford Plaintiffs additional non-contractual rights under Texas law.

**Prayer for Relief**

WHEREFORE, Plaintiffss respectfully ask that this Court to:

(1) Declare the Agreement is a franchise agreement that is subject to the requirements of the Texas Business Opportunities law;

(2) Find Defendant liable for fraud and fraudulent misrepresentation;

(3) Find Defendant is liable for violation of the Texas Deceptive Trade Practices Act and violation of Texas Business Opportunities Law;

(4) Enter Judgment in favor of Plaintiffss in an amount not less than 500,000 plus interest, costs, expense and attorney's fees;

(5) Treble the above award of damages under the Texas Deceptive Trade Practices Act;

(6) As it relates to Plaintiff Meyer, award him actual damages which include non-economic damages regardless whether Defendant acted intentionally; and

(7) Grant such further relief as this Court deems just and proper.


Respectfully submitted:              ___/s/Christopher Koch_____
                                     Christopher Koch
                                     Chris Koch Law PLLC
                                     State Bar No. 24073637
                                     Address: 1100 Lake Carolyn Pkwy
                                     Ste 3066
                                     Irving, TX 75039
                                     ck@klgroupsolutions.com
                                     klgroupsolutions.com
                                     Tel:972-302-8585

CERTIFICATE OF SERVICE

I certify that on November 9, 2021 a true and correct copy of Plaintiffs' 2nd Amended Complaint was served to each person listed below by e-file through the court's e-file system Attached to the motion to Amend.

Respectfully Submitted:
Chris Koch Law/Koch Law Group

/s/ ____Christopher Koch_____

Dated:  November 9, 2021