**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| CONA HEALTHCARE LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:21-cv-00785-M |
| MD MEDIA LLC, | § § § | |
| Defendant. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, Motion to Dismiss for Improper Venue (ECF No. 13), and the Unopposed Motion for Leave to File Supplemental Brief in Support of Its Motion to Dismiss (ECF No. 22), both filed by Defendant MD Media LLC d/b/a The Drug Rehab Agency.  Also pending is Plaintiff Cona Healthcare LLC's opposed Motion for Leave to File Second Amended Complaint.  ECF No. 20.

The Unopposed Motion for Leave to File Supplemental Brief is **GRANTED**.  For the reasons stated below, the Motion to Dismiss is **GRANTED**.  Plaintiff's Motion for Leave to File Second Amended Complaint is **DENIED.**

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Cona Healthcare, LLC alleges in the Amended Complaint that Defendant MD Media LLC, doing business as The Drug Rehab Agency, marketed a proprietary online recovery and drug rehabilitation program under the brand name "Recovery Delivered."  Am. Compl. (ECF

No. 10) ¶¶ 20–27.  In June of 2020,[1] Plaintiff entered into a Software Services and Licenses Agreement (the "Agreement") with Tara Healthcare LLC, under which Tara Healthcare would provide software and associated services to operate an addiction treatment clinic under the Recovery Delivered platform, in exchange for a $50,000 initial onboarding and set-up fee and ongoing payments based on use.  *Id.*; Def. Mot. Ex. A (ECF No. 13-1) (the "Agreement").  The Amended Complaint does not state the relationship between Defendant MD Media and Tara Healthcare, other than alleging that Marcus Hansen is the CEO and Founder of MD Media, and also owns and operates, in whole or in part, Tara Healthcare.  *Id.* ¶¶ 17, 38.

The Agreement contains an arbitration clause providing that "[a]ny controversy or claim arising out of or relating to this Services Agreement, or the breach thereof, that cannot be resolved directly between the Parties, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules applying the laws of the State of Delaware."  *See* Agreement ¶ 15.  The Agreement further provides that, notwithstanding the arbitration provision, if a court determines that an action may be brought, the Agreement shall be construed under Delaware law, and "[a]ny disputes or claims arising out of this Services Agreement or any other matter related hereto shall be brought into the appropriate court of New Castle County, Delaware or in the United States District Court for the District of Delaware, as may be appropriate."  *Id.*

Plaintiff alleges that shortly after entering into the Agreement and paying the $50,000 onboarding fee, Plaintiff learned that the Recovery Delivered platform was not unique or proprietary, and that Tara Healthcare did not have the infrastructure or support in place to

---

[1] The Agreement in question has an effective date of October 1, 2019, but was executed on June 29, 2020.  *See* Def. Mot. Ex. A (ECF No. 13-1).  The difference between the effective date of the Agreement and the date of execution does not impact the Court's analysis.

support the business.  Am. Compl. ¶¶ 30–31.  Plaintiff alleges that on October 28, 2020, Defendant terminated the Agreement and refused to return the $50,000 fee previously paid.[2]  *Id.* ¶¶ 35–37.

On April 6, 2021, Plaintiff filed suit, originally bringing claims against four defendants: The Drug Rehab Agency, Tara Healthcare LLC, and the owners and operators of Tara Healthcare, David Dobkin and Marcus Hansen.  *See* Compl. (ECF No. 1).  On May 12, 2021, Plaintiff filed the Amended Complaint, dropping the original four Defendants and adding MD Media LLC d/b/a The Drug Rehab Agency as the sole defendant.

Plaintiff brings claims for violation of the Texas Business Opportunities Act and Texas Deceptive Trade Practices Act ("DTPA"), fraud and fraudulent misrepresentation, and a declaratory judgment that the Agreement constitutes a franchise.  Am. Compl. ¶¶ 51–80.  Specifically, the Amended Complaint alleges that the Agreement is a franchise agreement subject to disclosure requirements of the Texas Business Opportunities Act, and MD Media, as a franchisor, made fraudulent and misleading promises of financial gain to induce Plaintiff to enter the Agreement with Tara Healthcare.  *Id.* ¶ 3.  Plaintiff further alleges that MD Media has continued to market and sell the Recovery Delivered platform online for a $250,000 onboarding fee.  *Id.* ¶¶ 40–43.

MD Media moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), on the grounds that Plaintiff's claims arise from or relate to the Agreement, and Plaintiff, as signatory to the Agreement, must arbitrate its claims against non-signatory MD Media under the plain

---

[2] The Amended Complaint alleges that "Defendant"—*i.e.*, MD Media—terminated the Agreement, despite not being a party to the Agreement.  The Amended Complaint purports to attach "a copy of the Termination" as Exhibit B to the Amended Complaint, but no such exhibit was submitted.

language of the Agreement's broad arbitration provision. In the alternative, MD Media moves to dismiss under Rule 12(b)(3) for improper venue, pursuant to the Agreement's venue provision.

## II. LEGAL STANDARD

A district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration. *Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.*

To determine whether Plaintiff should be compelled to arbitrate its claims against MD Media, the Court considers whether the parties agreed to arbitrate the dispute in question by examining (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the dispute in question falls within the scope of that agreement. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). If there is a valid agreement to arbitrate, and there are no legal constraints that foreclose arbitration, the Court must order the parties to arbitrate their dispute. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

"Who is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 355 (5th Cir. 2003). In deciding whether a nonsignatory can compel a signatory to an arbitration agreement, the Fifth Circuit has instructed that the Court should first determine whether a valid agreement to arbitrate exists that encompasses the claim at issue. *See, e.g.*, *Sherer v. Green Tree*

4

*Servicing LLC*, 548 F.3d 379, 382 (5th Cir. 2008) ("Based on the Loan Agreement's language, Sherer has validly agreed to arbitrate with a nonsignatory, such as the loan servicer Green Tree, and the language is sufficiently broad to permit Green Tree to compel arbitration."); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) ("[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract."). Only if that approach fails does the Court look to other theories, such as equitable estoppel, to determine whether a nonsignatory can compel arbitration. *Sherer*, 548 F.3d at 382. The Court applies ordinary contract principles from the law of the state governing the agreement to determine whether a party agreed to arbitrate. *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004).

**III.   ANALYSIS**

The Court determines that MD Media has established that Plaintiff agreed to arbitrate the claims at issue, and accordingly, the Court lacks subject matter jurisdiction over this case.

The uncontroverted evidence shows that a representative of Plaintiff executed the Agreement in June 2020, which expressly provides that "the validity, construction and effect of the . . . Agreement, and all extensions and modifications thereof, shall be construed in accordance with the laws of the State of Delaware."[3] Agreement ¶ 15. Delaware law provides for a two-part inquiry to determine if a given claim is subject to arbitration. *See, e.g.*, *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 430 (Del. Ch. 2007). First, the Court determines if the arbitration clause is broad or narrow in scope, and second, the Court considers whether the asserted legal claim falls within that scope. *Parfi Holding AB v. Mirror Image Internet, Inc*., 817

---

[3] Despite this clear and unambiguous choice of law provision, Plaintiff does not address Delaware law, and instead relies almost exclusively on Texas law in construing the Agreement's arbitration provision. *See* Resp. (ECF No. 15) at 12–18. However, because the Court concludes that Plaintiff's claims fall within the scope of the arbitration clause under either state's law, the Court need not reach the conflicts of law question.

5

A.2d 149, 155 (Del. 2002). "If the arbitration clause is broad in scope, the court will defer to arbitration on any issues that touch on contract rights or contract performance." *Id.* Delaware courts "resolve any doubt as to arbitrability in favor of arbitration." *Id.* at 155–56.

The Agreement states that "*[a]ny* controversy or claim *arising out of or relating to* this Services Agreement, or the breach thereof, that cannot be resolved directly between the Parties, shall be settled by arbitration." Agreement ¶ 15 (emphasis added). The Delaware Supreme Court has recognized "an intent to arbitrate all possible claims that touch on the rights set forth in their contract" where the parties agree to arbitrate any dispute "arising out of" a contract. *Parfi*, 817 A.2d at 155; *see also Innerwireless, Inc. v. Johnson Controls, Inc.*, No. 3:07-CV-312-M, 2007 WL 2428591, at *2 (N.D. Tex. Aug. 27, 2007) (Lynn, C.J.) (citing Fifth Circuit cases construing arbitration clauses covering "any dispute" related to an agreement or business relationship to be broad arbitration clauses).

Plaintiff points to the "between the Parties" language in the arbitration provision to argue that, because MD Media is not a party to the Agreement, the arbitration provision does not apply to Plaintiff's claims against MD Media. The Court disagrees. The arbitration provision states that any controversy or claim arising out of the Agreement "that cannot be resolved directly between the Parties" shall be arbitrated. Agreement ¶ 15. This quoted language does not limit the type of dispute subject to arbitration, but rather specifies an exception to the provision; put differently, any controversy or claim arising out of or related to the Agreement shall be arbitrated, except for those that can be resolved directly between Plaintiff and Tara Healthcare. Accordingly, because Plaintiff has agreed to arbitrate claims arising out of relating to the Agreement, Plaintiff must arbitrate its claims against MD Media if those claims arise out of or relate to the Agreement.

6

In the Amended Complaint, Plaintiff brings claims against MD Media under the Texas Business Opportunities Act and DTPA, fraud and fraudulent misrepresentation, and for a declaratory judgment. The Agreement's arbitration provision encompasses these claims because each of them arise out of or relate to the Agreement. For its Business Opportunities Act and DTPA claims, which the Court considers together,[4] Plaintiff alleges that MD Media marketed and sold a "franchise opportunity," and misrepresented the characteristics and benefits of the goods and services it sold under the Agreement. Am. Compl. ¶¶ 51–61. Plaintiff's fraud and fraudulent misrepresentation claim similarly alleges that MD Media's representations induced Plaintiff into entering into the Agreement. *Id.* ¶ 63. Such claims are based on the Agreement, and thus are subject to arbitration. *See Commerce Park v. Mardian Construction Co.*, 729 F.2d 334, 338 (5th Cir. 1984) (Texas DTPA claim subject to arbitration). Moreover, Plaintiff's declaratory judgment claim seeks a declaration that the Agreement is a franchise agreement subject to heightened disclosure requirements; this claim undoubtedly is based on and requires analysis of the Agreement, and accordingly must be arbitrated.

Plaintiff's arguments to the contrary are unavailing. Plaintiff argues that it is not suing to enforce its contractual rights, and that Plaintiff actually considers the Agreement void as the result of illegal conduct, namely Tara Healthcare's and MD Media's selling a regulated transaction in violation of the Business Opportunities Act. *See* Resp. at 22–23. However, Plaintiff provides no authority to suggest that its position that the Agreement is now void renders its prior agreement to arbitrate unenforceable. *See SGC Health Grp., Inc. v. Eclinicalworks, LLC*, No. 3:15-CV-4022-M, 2016 WL 2595109, at *2 (N.D. Tex. May 4, 2016) (fraud, negligent misrepresentation, and

---

[4] Because the Texas Business Opportunity Act explicitly states that violations of its terms give rise to a deceptive trade practice claim under the DTPA but does not itself provide a cause of action, Plaintiff's Business Opportunity Act and DTPA claims are properly considered a single claim under the Texas DTPA. *See Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing Tex. Bus. & Com. Code § 51.302).

DTPA claims based on misrepresentations arbitrable under contract requiring that "any dispute" must be arbitrated). Moreover, "parties to [arbitration] agreements cannot avoid them by casting their claims in tort, rather than in contract." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000). Assessing whether MD Media made misrepresentations or improperly sold the Agreement as a franchise opportunity without certain disclosures necessarily involve evaluation of the Agreement. To the extent there are doubts about the arbitrability of these claims, the Court resolves those doubts in favor of arbitration. *See Parfi*, 817 A.2d at 155–56.

Finally, although the Court has already determined the Agreement's arbitration provision is broad enough to encompass Plaintiff's claims against MD Media, the Court further concludes that Plaintiff is equitably estopped from litigating its claims in this Court. Equitable estoppel prevents a signatory to an arbitration agreement from "hav[ing] it both ways"; Plaintiff "cannot, on the one hand, seek to hold [a] non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Grigson*, 210 F.3d at 528. Here, MD Media represents that Plaintiff has served an arbitration demand on Tara Healthcare, David Dobkin, and Marcus Hansen—the three since-dismissed defendants named in Plaintiff's original Complaint—and is pleading "nearly identical" factual and legal claims as those asserted in Plaintiff's First Amended Complaint. *See* Def. Supp. Br. (ECF No. 22-1) at 1–2. Plaintiff cannot seek relief in arbitration against these parties, two of whom are not signatories to the Agreement, while disclaiming the arbitration provision's applicability to MD Media for the same conduct and allegations, simply because MD Media is not a signatory. Accordingly, Plaintiff is estopped from litigating its claims in both arbitration and before this Court.

### a. Motion for Leave to File Second Amended Complaint.

On November 9, 2021, Plaintiff filed an opposed Motion for Leave to File a Second Amended Complaint, requesting leave to amend its pleadings to add Plaintiff's majority owner as a plaintiff, correct typographical errors, add minor factual allegations to clarify and support diversity jurisdiction over the parties, and to add "some minor non-dispositive factual allegations to correct the factual timeline and the narrative." ECF No. 20. The Court, having reviewed Plaintiff's proposed amendments, concludes that the requested changes would not cure the jurisdictional deficiencies based on the binding arbitration provision included in the Agreement. Accordingly, because Plaintiff's proposed amendments are futile, the Motion for Leave must be denied. *See Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985).

## IV. CONCLUSION

Plaintiff's claims against Defendant MD Media are subject to binding arbitration. Accordingly, because the Court lacks subject matter jurisdiction over this case, the Motion to Dismiss is **GRANTED**. Plaintiff's Motion for Leave to File Second Amended Complaint is **DENIED**.

**SO ORDERED**.

December 6, 2021.

BARBARA M. G. LYNN
CHIEF JUDGE

9